And we'll go from there. Nicole, please call the case. Attorneys who are going to argue, please approach the bench and identify yourselves. Appellant. I'm Todd McHenry with the Office of the State Appellant Defender. Mr. McHenry. Good morning. For the record, Assistant State's Attorney Erica Gilliam Booker with the Cook County State's Attorney's Office. Booker? Yes. Okay. Both sides will have 15 minutes to orally argue. The appellant, you'd certainly want to have rebuttal. So reserve from that 15 minutes whatever time portion you'd like to rebut. Okay? Thank you. Okay. Very good. Appellant, proceed. May I please the court? As I mentioned, I'm Todd McHenry and I represent Charles Lard. I'd like to reserve two minutes for rebuttal. There's one issue before the court today, and that is whether or not Mr. Charles Lard was denied his right to confront the witnesses against him, where he was convicted of residential burglary based on the preliminary hearing testimony of the responding officer. In this case, the preliminary hearing testimony, the cross-examination that was performed there, was done by an attorney who had, that was her very first and only appearance on the case. She was then representing both Mr. Lard and co-defendant Charles Denton at the time, and the substance of her cross-examination went to trying to clarify where the officer was and what he saw from the location that he was positioned at. Last year in People v. Torres, the Illinois Supreme Court reversed and remanded a murder conviction where preliminary hearing testimony was used to convict the defendant, and the defendant was denied the right to confront the witnesses against him. The cross-examination in People v. Torres, while the Illinois Supreme Court described it as very brief, it was in many respects more extensive than the cross-examination that was performed here in this case. In that case, the cross-examination got out that the key witness was away from the room where the shooting occurred for one to two minutes. There was voices he heard, overheard from the other room, but he couldn't determine whether or not there was an argument. He did not see the defendant with a gun. He did not see the defendant standing over the victim. All of these things came out in the cross-examination, and the attorney also, in arguing over one of the objections, stated that they were going explicitly into the bias of the witness. Counsel, can I ask you, in Torres, doesn't the Supreme Court say that what counsel knows while he's conducting cross-exam may impact on counsel's ability to effectively cross? It doesn't say it's a mandatory inquiry by the courts. It may affect the court to use its discretion, correct? That's absolutely correct, Your Honor. And in doing that, the first step in the analysis, though, by the Torres Court is to determine whether or not the motive and focus of the cross-examination was similar or the same as to the cross-examination, what it would be at trial. In Torres, where you had a more extensive examination that you had here, the court was able to conclude that the motive and focus was indeed similar. That is not the case before us today, where the cross-examination literally just started to get into, well, Officer Wilcox, where were you at that time? What did you see? Wilcox stated that at one point in the direct examination, he stated that he saw the defendant and the co-defendant in the rear of the building, and it sounded as if he was saying that both of them were lifting or putting down a carpet wrapped around a copper pipe at that point on cross-examination. He clarified that he did not see Charles Lard touching any of the copper pipe or the carpeting, and he then started to state that he saw them originally from the street or at the street. It, of course, wasn't known at the time of the preliminary hearing, but at the time of trial, it was certainly known by that point that you could not see the rear entrance to the building from the street. It was, in fact, at the back of the building, just as you go down the side driveway to the very back. So counsel certainly was not privy to the fact that the officer could not have seen anybody going in or out of the door from the front street, and so counsel wasn't able to press Officer Wilcox about that detail at trial. The state, in its brief, argues that… But they were able to proof that up at trial, were they not? Meaning that the officer's testimony that I saw them going into the rear of the building from the street, that was incorrect, right? That was false. And they brought that at a trial, right? I'm actually not certain, Your Honor. They did get out of the witness, Ingram, that you could not see that door from the front. However, I think that the testimony at the preliminary hearing is somewhat ambiguous as to whether or not he supposedly made the visual contact of going in and out of the door from the front street or whether it was when he was coming farther down the side. And additionally, the right to confrontation is the right to confront the witnesses against you, not to confront a third party who can also attest to whether or not a door was visible or not. So the fact that in looking at Crawford v. Washington, for example, going through the historical analysis of how the right to confrontation has developed, it's a face-to-face right, and there's a value that's inherent in that right to actually being able to confront the witnesses against you at the time that they're testifying because it's not simply that the trier of fact could piece together that, well, maybe the officer was not being truthful about what he saw when he first arrived on the scene or was embellishing. If he had been confronted in a cross-examination by an attorney who was armed with the facts, all of a sudden the integrity of the testimony could have started to break down. So being denied that opportunity in this case where there are significant questions, one, being the attorney who had just been literally appointed to arrive to do the preliminary hearing, and that was the last appearance on this case, represented both the defendant and the co-defendant at that time. So certainly they're not going to be pressing the issue. Mr. McKenna, excuse me for interrupting, but at this preliminary hearing, the attorney represented both Mr. Lard and a Mr. Denton, is that correct? That's correct. Okay. Is there any evidence that was ever presented below that the defenses by this one attorney was hampered because of antagonistic defenses between these two defendants? Was there any evidence presented on that? There was no evidence that there was certainly not an antagonistic position that was posited at trial. However, as the evidence came out at the preliminary hearing. There was no affidavit by the attorney saying that they were concerned about that being a difficulty in presenting an adequate defense? There's no affidavit, Your Honor. However, the case was assigned to the multiple defenders unit, and the preliminary hearing, I believe, is the last time that both defendants were represented by the same attorney. So they received. Without that type of evidence in the record or before us, it would be making it very difficult for us to make a reversal on that basis, wouldn't it? Your Honor, actually, I believe no, because in People v. Torres, certainly those other considerations, if you get past the point of concluding that the examination at the preliminary hearing was of the same or similar motive and focus as what would have been at trial, if you conclude that, then you would go on to under Torres the other steps, which you would consider whether or not there was any additional information that came out that would have been something that could have been used for impeachment and those sorts of things. But, you know, the constraints that are on the attorney, both the objection that was sustained at the preliminary hearing. I mean, in Torres, they emphasized that two objections were sustained, and the only Supreme Court said that that sent a message to the attorney to probably to wrap things up. So in this case, there was one objection when, you know, the defense counsel was starting to press, you know, well, were they at the door? Were they actually going inside at the time, and who was doing what? So that objection was sustained. So this was certainly not an exhaustive cross-examination or an adequate opportunity for an effective cross-examination where none of the key facts were known to the attorney who was just literally trying to figure out, you know, what are you saying here and get the witness down on paper as to where everybody was. You cited Crawford a few minutes ago, and in your brief you cite Fry, where the Colorado Supreme Court held that preliminary hearing transcripts are never good enough. They should never be admitted in the theory of the Colorado Supreme Court. Wouldn't Torres actually support just the opposite conclusion? Since our Supreme Court held in Torres it looked at what was said by Perez, the eyewitness who didn't see the murder. But they didn't say Crawford. They didn't have any problem with that at all, right? Correct. That's certainly correct. In People v. Fry, they were taking a stance that is different than what we are advocating here. We're not asking for a, I mean, certainly the Illinois Supreme Court in Torres came down and said that, yes, you know, you can have, they were not making a blanket rule one way or another. They were explicit about that this is a case-by-case basis on whether or not preliminary hearing testimony can be admitted at trial, whether the witness is unavailable. However, I think that Fry does illustrate that there are concerns at a preliminary hearing, that the scope of it is going to be limited, as it should be, to the question before the court. It's not meant as an exhaustive discovery vehicle. And in this case, the facts of this case really illustrate sort of what Fry was getting at where, you know, once probable cause had been established, it wasn't as if defense counsel said, you know, I'm finished with this witness, Your Honor. The way that it transpired was there was an objection. It was sustained. There was another question or two. And then at that point the court just said, you know, that finding a probable cause, motion for the state for arraignment. So in this case, you know, they had met the criteria. And what they were there to do with the preliminary hearing, there was no reason to go on. Counsel, let me ask you this. In the Tories' case, there were a number of things the court considered. Inconsistent statements given to the police officers, witnesses' alien status. I mean, a number of unique things in that case that are not present in this case. What is it about this case that meets the standards demanded in Tories? I would say first of all, there are several things. First and foremost, the content of the cross-examination comparing the cross done here versus Tories are very different. And if the Illinois Supreme Court, you know, characterized that cross-examination as very brief, certainly this one doesn't even rise to that level. The counsel never stated that they were trying to impeach or trying to seek to show bias of the witness in our case, whereas they did in Tories. So. Weren't they trying to see his ability to see what was going on? I think that, I mean, the way that I read the preliminary hearing is they were trying to literally figure out, okay, officer, you're saying you were right here, or were you right there, and what did you see? They were not trying to, at one point, actually counsel corrects herself when she starts to, when they were talking about objection, she starts, or starts to ask a question. She says, Your Honor, well, could you see, or I'm sorry, the witness, could you see? And then she stops, and then she changes the question to, so were you, were you at the street, or were you on the side? So she didn't even have the facts established that would have allowed her to perfect impeachment, because I don't think it's clear on the record that you can say, even with the witness Ingram's testimony at trial, where you could say, okay, you can't see the rear door. I don't think that that gives you necessarily impeachment at that point, because you don't have the officer firmly saying, I was right here, and this is what I saw. And then to impeach him, you would say, well, this other witness is saying who owns the building. Those were her questions, and the court didn't impede her in asking those questions. The court did sustain the state's objection at one point after she was trying to clarify. So did you see him go into the door, or was he at the door, talking about Mr. Lard at that point? So the court did sustain the one objection, and as I mentioned in Torres, the court emphasized that the preliminary hearing court sustained two objections. But wasn't that because the court already heard that? The officer said, I don't know, I didn't really see him going around. I saw him there. I think a fair reading of it would be that's likely what was thought at the time in reading the transcript. However, I don't think it's crystal clear as to where exactly the witness is saying that he was in the car, where the defendants were at the time, and what they were doing at the time. So also additionally, to go back to the first and foremost in distinguishing or in saying how this case is similar or different to Torres was the content of the cross-examination itself. But even if you go past that, in this case, you know, there's a representation of two clients, which was not the case in Torres at the time. So, I mean, certainly counsel is going to feel some restriction in prying into things that could be harmful to one client versus the other. This is the very reason why, presumably, the case was assigned to the multi-defenders unit, you know, after the preliminary hearing. So those are concerns, you know, and also without knowing discovery, certainly counsel wasn't aware of the fact that you couldn't see the rear door from the front street. For those reasons, if this court finds that there was error based on people versus Torres, where the only evidence implicating the defendant came by way of this testimony, that error must be harmful and the state cannot prove it's harmless beyond a reasonable doubt. For those reasons, we ask this court to reverse. Thank you. You've got five minutes for rebuttal, sir. May it please the court, my name is Assistant State's Attorney Erica Gilliam Booker. This is a simple case, Your Honors. Specifically in this case, there were two defendants, Charles Lard and Charles Denton. On September 22nd of 2009, Officer Wilcox, who was the unavailable declarant in this case, did respond to suspicious individuals at the address of 1023 11th Avenue. Upon responding to that area, Officer Wilcox did indeed see two individuals, Charles Lard and Charles Denton. Specifically, what Officer Wilcox saw was initially Denton exiting outside of the apartment, and in his hand he had a carpet, and inside of that carpet were copper pipes. Charles Lard, the defendant in this case, was in tow. In addition, after Officer Wilcox saw those individuals outside of that apartment or that building, they were seen going in together, and they were also arrested together. And this is essentially the testimony that Officer Wilcox put forth during the preliminary hearing that occurred on October 7th of 2009. The cross-examination consisted of 23 questions, four cross-examination, eight objections, seven of which were overruled in the defense's favor. And as a result... Yanna, I can't speak to that. I will say that the objections that the Assistant State's Attorney, Michael Malley, set forth were objections that were within the rules of the Illinois Rules of Evidence. I will say that. But ultimately, at the trial level, because the declarant, Officer Wilcox, did die before the case went to trial, his preliminary hearing transcript was properly admitted under the Illinois Supreme Court rules, and also in accordance with the Confrontation Clause. And that's what we maintain today. Now, specifically, the Illinois Rules of Evidence at first require if the declarant is unavailable. The declarant was unavailable because he was deceased. And I think the crux of today's argument deals with the cross-examination. Was there a full and fair opportunity to be able to cross-examine? And the people do maintain that there was a full and fair opportunity to cross-examine. And specifically going to the Illinois Supreme Court in Torres, People v. Encarnacion Torres, states that as long as there is a motive and focus at the initial hearing and the subsequent hearing, that preliminary hearing or that formal testimony of the unavailable declarant is able to be properly admitted. And that's what Torres teaches us. Now, specifically in the instance case, the initial hearing was a preliminary transcript in the instance case. And then the initial case, or the subsequent case, was the trial court or the actual trial hearing. We do maintain that based on the questions that were asked at the preliminary hearing and the questions that were asked at the trial court, all dealt with basis of observation. Specifically as to the preliminary hearing, the types of questions that were asked all dealt with the basis of observation. Where the officer was when he first observed both of the defendants. How far he was away when he observed the defendants. Or when he was able to see the individuals from that rear building. Those same types of questions, those same basis of line of questioning regarding the basis of observation were asked of Ingram, who was the owner of the building. All of those questions during cross-examination dealt with the fact that one could not see the door, that rear door, a 102311 Avenue from the street. Or the fact that they could not see the defendants taking anything out of the building. And specifically at the end, there was a defense exhibit which showed a picture of the building where it was reiterated once again that you could not see the door from the street. And those are the same questions that were asked, the same basis of observation questions that were asked at the preliminary hearing. As a result, we do maintain that the motive and focus was the same at the preliminary hearing and at the trial court level. What other evidence was there at trial that this defendant was actively participating in the residential burglary? What other evidence? Well, there's also the corroborating testimony of Ingram, who was the owner of the building, who testified that he had never seen those individuals before Charles Denton and Charles Lark. And the fact that he did not give those individuals permission to enter 102311 Avenue. He was there at the scene, but what other evidence is there that he was participating in the burglary? Besides the evidence of Officer Wilcox, that is the linchpin of this case. And we do maintain that that is the evidence that Officer Wilcox set forth during the preliminary hearing. Now, Torres just... So that's my point. What else supports his conviction other than that preliminary hearing testimony? Besides Officer Wilcox's testimony of what he saw, there is also Ingram, who is the owner of the building, who states that he did not give those individuals permission to enter into that residence. So that would be the other evidence that supports residential burglary. Now, going back to Torres, because Torres is... May I ask a question? Yes. It appears that the attorney did not know of the prior break-in for lack of discovery. Why is that not important in your mind? Well, as to the 3 p.m. incident, I will point out that the trial court at the time did not consider that to be a break-in, a burglary, if you will. But I will maintain that that 3 p.m. instance is irrelevant. It's not the case that's charged. And also, if... From the defendant's point of view, wouldn't that be important that your lawyer know this? Well, the people consider that to be irrelevant. It's not the case that's charged. Also, getting into the information as to what happened... But it could have ran to his defense as to what could be seen, not seen. Those questions were asked as to what occurred at 6 p.m. during the preliminary hearing, and at the trial court level, those same questions were asked. And if counsel were to inquire as to what happened at the 3 o'clock incident, those questions would be the same that were asked at the time of the 6 p.m. hearing. All of those questions, the 6 p.m. incident, all of those questions dealt with the basis of observation. Now, going back to Torres, just to make a couple of distinctions, I will make clear that the Illinois Supreme Court did state that the motive and focus were the same. They did agree, but there were a couple of concerns that they had with that specific case. The fact that there was a coercive environment that was created. In the case, there was an instance where the trial court was reluctant to start the preliminary hearing, and specifically going to what occurred with the objections. That also created a coercive environment. For example, that first objection that was made by the defense counsel was certainly sustained, and when the defense counsel stated that he wanted to explore the bias of the witness, and specifically the bias of the witness and the victim's father, the trial court overruled that. However, the defense did not explore that prejudice. Now, the second objection was the basis was argumentative. In this case, Perez testified on cross, so he didn't know the father. So I don't know how much more anybody, any rational person, would have thought how much more cross you're going to have of how much biases are between you, sir, and this man who you've never met before. None. Well, there should have been more, according to our Supreme Court. Having done it for a living, I'm a little surprised. But in this case, the trial court, in ruling on the use of this preliminary testimony, did say that there was no question but that the defense counsel did not have a full opportunity to cross-examine Officer Wilcox. Is that right? That, well, as to what defense stated, yes. However, we maintain that there was a full and fair opportunity to cross-examine. So the trial court was wrong when he said that there was not a full opportunity? No. The people believe that there was a full and fair opportunity to be able to cross-examine. Isn't that a question of the fact that the trial court, and they're making it up at page three of the weight brief, they cite two pages in the record where the trial court in ruling on this said there was not a full opportunity. But the trial court did allow for that preliminary hearing transcript to be inserted. Yes, the judge did. And as a result of allowing that transcript to be inserted into evidence, that does show that there was a full and fair opportunity to cross-examine, because even during the colloquy that happened, the people maintained that there was a full and fair opportunity to cross-examine, and that preliminary hearing transcript was indeed allowed in addition. But going back to some of the concerns that occurred with Torres, which is the most recent case that we have before us, those concerns regarding a coercive environment are not reflected in the case that we have here. There was no evidence of the trial court, not the trial court, the court at the preliminary hearing, expressing any reluctance to start the hearing itself. There were no comments that were made at the beginning. But more telling was the fact that the number of objections that happened. Specifically in the instance case, there were eight objections, seven objections which were in favor of the defense. And the fact that those objections, all of those objections dealt with the basis of observation of the officer, of Officer Wilcox. And all of those basis of observation objections that were overruled shows that there was no coercive environment that occurred. In addition, the last objection that occurred, that one objection that was sustained, was for the purpose of being argumentative. I was going to ask you as far as the standard of review in the Torres case. Do you recall what the Supreme Court said as the standard of review in reviewing these cases that have to do with inadequate cross-examination? Sure, Your Honor. As to people v. Torres, they stated that it would come out either way. Whether they looked at the standard of review under de novo or under abuse of discretion. And that was specifically stated at 926 N.E. 2nd, 919. That's kind of like dodging the bullet. What should be the standard of review? We maintain that the standard of review should be abuse of discretion. And that was communicated by people v. Sutherland. They stated that when there is the admission of formal testimony that is included, the proper standard should be abuse of discretion. As to the non-coercive environment that was created, that is not what happened in the instant case. There was not a coercive environment. And also speaking to the fact that during the preliminary hearing, there was representation of one counsel by two defendants. The people maintained that there were no antagonistic defenses that occurred at that time. And this is an instance where the defendants were seen outside together, they were seen going in together, and they were immediately arrested together. As a result, there were no antagonistic defenses. And also speaking to the discovery, the lack of discovery that occurs at the preliminary hearing. Illinois v. Torres did state that while discovery may not be available at the preliminary hearing, what's most important is that there is a full and fair opportunity to cross-examine. And the people maintain that that is specifically what occurred here. Counsel, would you admit it puts defense counsel at a bit of a disadvantage when the state knows many more facts or allegations about the case than the defense counsel does not? Yeah, I would point out that it's not an instance where the people know more facts. They did, though, in this case, as far as the prior instance of burglary. It is my understanding that they did not know those facts at the time. Was it in the police report? I'm not sure. I don't think it was in the police report. It was only specifically of what occurred at 6 p.m. But the Illinois Supreme Court did make clear in Torres that although preliminarily discovery is something that is not tendered during that preliminary hearing juncture, as long as there is a full and fair opportunity to be able to cross-examine, being able to get into specifically what happened. But to maintain specifically what happened in this case is that the motive and focus of the case is that there is a preliminary hearing. The motive and focus was the same at the preliminary hearing, which is the initial hearing. In addition to the subsequent hearing, the motive and focus were the same, and none of those factors that were reflective in Torres regarding the Illinois Supreme Court's concern, regarding the coercive environment, or even the fact that there were some inconsistent statements, that were not explored. The people maintained that there were no inconsistent statements in the instant case that was found out about at the trial court level. And I see that my time is approaching, and if there are no other questions for the reasons stated today, and also the reasons that are stated in the brief, we ask that you affirm the defendant's conviction. Thank you. Thank you, Your Honors. Just three brief points. First, you know, the state is arguing that the, essentially that the right to confrontation was satisfied based on, in part, the opportunity for a defense counsel at trial to cross-examine a third party. There's absolutely no legal authority that's been cited, or that defense counsel is aware of, that would, you know, extinguish somebody's right to confront the witnesses against them by being able to confront someone else other than the witnesses. Additionally, as far as the prior burglary goes, as Your Honors brought up, that actually it was made relevant to the trial, where you have the owner of the building then at trial testifying to the condition of the property after the purported first break-in versus the second one. So it was made to be, you know, a relevant factor at trial. It's something that, you know, certainly counsel would have been able to go into, and apparently there was an inconsistent statement. Because, again, you point out in your brief that the, Mr. Ingram didn't know when the home had been, and this is an abandoned house, that's why people are in there stealing the wiring out of it and the plumbing, the, or I should say, not abandoned, it is empty. Nobody's residing in it. And so he says, I left my house, I left the property at 430, I don't know what it was broken into, but at 430, I repaired the lock at the back door and left. An hour and a half later, I get a call from Officer Wilcox saying he just caught two guys at the rear of my building. So 90 minutes from the time he knows he secured the premises, the time these two guys, Denton and Lahr, are caught with the door shattered and they're walking in and out, or whether Denton's carrying a carpet and Lahr's walking in the back door, right? So it's a very different idea that Lahr and Denton are burglarizing it then, rather than helping them. We don't know what occurred. We know that 90 minutes ago, that place was secure. The inconsistency that I'm referring to, Your Honor, is that originally, in the police report, the officer represents that Ingram stated that the first break-in occurred sometime on the 21st to possibly the 22nd. That is different. Ingram denied making that statement at trial. So that's something that was not right, and that would have been grounds that you could have sought to impeach the officer on. And finally, with respect to People v. Torres, the cross-examination here versus the cross-examination there couldn't be more different. There, obviously, counsel was saying, I'm going into bias, was allowed to ask a question to go into bias, and as Justice Quinn stated, once the witness denied having a relationship or knowing of the father, it couldn't go any farther with that. But it certainly wasn't the court. The court was allowing them to go down that road. The State would attempt to distinguish our case from Torres based on the fact that in our case, there was only one, in the State's view, only one objection that was sustained. In Torres, it was two. To distinguish between one objection versus two as being dispositive, it certainly isn't supported under the facts of, under the rationale of Torres. Well, the objection in Torres was the defense attorney asked the witness, what day did this occur? And the State, because they're obnoxious, objected to that. And then the judge, because he's in a rush, said, yeah, yeah, that's sustained. And the reply by the defense attorney, how is that even objectionable? And the judge repeated, it's sustained. Correct. I mean, that was pretty bad. Correct. And, you know, in this case, however, there's, you know, certainly there was no, you know, there was no explicit attempt to go into bias. There was not an attempt to say, you were right here, well, you couldn't see the back of that door from right here, could you? You know, there was none of that. I was trying to ascertain where, in fact, were you? What are you actually saying that you saw at that point? So this was fact-gathering and trying to get the officer down on paper. It certainly was not an adequate attempt for an effective cross-examination. Couldn't the lawyer have been more effective in the cross at the preliminary hearing? I don't believe so. At that point, they have, you know, such limited information, they're just assigned the case, they represent both the defendant and the co-defendant, that the officer starts to vacillate on, you know, what he saw and where he saw it from. They're trying to figure out what's going on. In their response to the objection, they're stating, you know, I'm representing two people. I'm trying to figure out what's going on. So, you know, it's based on these facts. I don't think counsel could have done more with the cross-examination at that point without divining facts that weren't in front of them. For those reasons, we ask this Court to reverse. Thank you. Thank you. The Court is taking this matter under advisement. The Court is adjourned.